United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNERGY PROJECT MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br> Defendants. | Case No. 17-cv-06763-JST <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: ECF No. 8 |

Before the Court is Defendants City and County of San Francisco, San Francisco Public Utilities Commission, San Francisco Municipal Transportation Agency, San Francisco Department of Public Works, London Breed, and Mohammed Nuru's (collectively, "the City") Motion to Dismiss Plaintiff Synergy Project Management, Inc. ("Synergy")'s complaint.[1] The Court will grant the motion to dismiss in part and deny it in part.

## I. REQUESTS FOR JUDICIAL NOTICE

The City asks the Court to take judicial notice of (1) the California Tort Claims Act claim submitted by Synergy, (2) a declaration by Mathew J. Rothschild, Chief of the Claims Division of the City and custodian of records explaining that this was the only Claim submitted, (3) the General Conditions incorporated by reference into Synergy's subcontract,[2] and (4) the case summary and docket report for California Court of Appeal Case <u>Synergy Project Management v. City and County of San Francisco</u>, No. A15119. ECF Nos. 9, 25, 26.

---

[1] The complaint also raises claims against Does 1-100. ECF No. 1-1 at 2.

[2] The Court construes the City's declaration regarding the General Conditions as a Request for Judicial Notice. ECF No. 25.

Under the incorporation by reference doctrine, a court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached [to] the [plaintiff's] pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F. 3d 970, 986 (9th Cir. 1999)). The Court therefore takes judicial notice of the California Tort Claims Act claim which is referenced in the complaint. ECF No. 1-1 (First Amended Complaint or "FAC") ¶ 67. The Court also takes judicial notice of the General Conditions which are referred to in the subcontract attached as an exhibit to the complaint. Id. at 28; ECF No. 25-1. Finally, because a court "may take notice of proceedings in other courts . . . if those proceedings have a direct relation to matters at issue," Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citation omitted), the Court takes judicial notice of the Court of Appeal case summary and docket. ECF No. 26. The Court does not take judicial notice of the declaration by Rothschild, however, as the matter is not referenced in the complaint and the Court finds no other basis for judicial notice. See Fed. R. Ev. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

## II. FACTUAL BACKGROUND[3]

Synergy is a general contractor and subcontractor providing services including construction management, demolition, utilities, mass excavation and shoring, grading and paving, and architectural and structural management. FAC ¶ 16. Synergy has previously completed more than 50 projects for the City. Id. ¶ 17. Synergy and the City also have a protracted litigation history related to several of their prior contracts. Id. ¶ 19. In 2009, 2010, and 2012 Synergy sued the City for payment on various of these contracts. Id. ¶¶ 20, 21, 22. Although Synergy prevailed in these lawsuits, the City significantly delayed paying the damages, "financially chok[ing] Synergy." Id. ¶ 23. The delay "caused Synergy to lose its bonding, forced layoffs, and brought

---

[3] The Court takes the facts from the First Amended Complaint ("FAC"), ECF No. 1-1. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

2

the company to the brink of collapse." Id. ¶ 24. Synergy also lost the ability to obtain the bonds it needed to act as a general contractor. Id. Because it no longer had the financial wherewithal to act as a general contractor, Synergy turned to subcontractor work. Id. ¶ 25.

In February 2015, the City entered into a general contract with Ghilotti Brothers Inc. ("Ghilotti") to replace the sewer line at Haight Street (the "Haight Street Project"). Id. ¶ 26. Ghilotti selected Synergy as a subcontractor, and Synergy was listed on the bid to the City. Id. The subcontract agreement between Synergy and Ghilotti permitted Ghilotti to terminate Synergy as subcontractor on the Haight Street Project for breach of the agreement, failure to "prosecute the said work with promptness, diligence and efficiency," or failure to perform any of the requirements" of the contract." Id. ¶ 32. The agreement also permitted Ghilotti, in its sole discretion, to terminate the agreement without cause. Id.

As a part of the Haight Street Project, Synergy, general contractor Ghilotti, the City, and other project stakeholders entered into an additional agreement, which identified agreed-upon goals for the project and established procedures designed to facilitate the successful completion of the project (the "Partnering Agreement"). Id. ¶ 35.[4] "The Partnering Agreement identified several potential challenges foreseen by the parties to that agreement based on their experience with complex construction projects like the Haight Street Project, and established the parties' agreement as to how to meet these challenges." Id.

"The Haight Street Project was . . . particularly difficult . . . , due to many unknown subsurface structures not disclosed to Synergy in the plans provided to it by the City, which grossly understated the number of underground utilities present in the project area." Id. ¶ 37. While performing its work, Synergy damaged five of these underground structures, which were all PG&E gas lines. Id. ¶ 39. "The damaged gas lines drew significant public attention, and criticism from neighborhood residents and businesses disrupted by the corrective measures necessitated by

---

[4] The Complaint states that the Partnering Agreement is attached to that document as Exhibit B. Exhibit B to the Complaint is not a written contract, but is instead a May 2015 agenda for a meeting entitled "Haight and Hayes Project Kickoff Partnering Workshop." For purposes of this order, the Court nonetheless accepts the allegation of the complaint.

3

the damaged gas lines." Id. ¶ 40.

The City publicly blamed Synergy for the gas leaks. Id. ¶ 42. On October 8, 2015, Mohammed Nuru, the Director of Public Works for the City, wrote a letter to Ghilotti instructing them to stop work on the project and "remove [Synergy] immediately." Id. ¶ 43. Six days later, the City informed Synergy that the City had "directed Ghilotti to remove Synergy and to substitute a replacement contractor." Id. ¶ 46. Synergy formally objected to the removal. Id. ¶ 47.

On December 9, 2015, an administrative hearing took place before a City-appointed administrative hearing officer. Id. ¶ 50. The purpose of the hearing was to consider Synergy's objection that its termination by the City was improper given that the Ghilotti had neither requested nor consented to Synergy's termination. Id. ¶ 51. Ghilotti testified in favor of Synergy at the hearing. Id. ¶ 52. On January 8, 2016, the hearing officer issued a ruling in favor of the City. Id. ¶ 53.

Synergy appealed the administrative officer's decision through a writ of mandate to the Superior Court for San Francisco, which vacated the administrative officer's decision. Id. ¶¶ 55-56. That case is currently on appeal. ECF No. 26.

Concurrently, City officials "embarked on a campaign to publicly and erroneously depict Synergy as a bad contractor, and to constructively debar Synergy from participation in City projects." Id. ¶ 57. The City also "took arbitrary and capricious steps to block Synergy's participation in City projects and to remove Synergy from projects" for which Synergy had already committed substantial resources and was the most qualified and cost-effective bidder. Id. For example, on or about October 10, 2015, Supervisor London Breed publicly denounced Synergy and "announced the City's intent to use Synergy as a scapegoat to blame for problems with the Haight Street Project in retaliation against Synergy for its exercise of its constitutional right to petition the courts for redress of grievances." Id. ¶ 59.

Synergy's replacement subcontractor encountered similar difficulties and hit a gas line in June 2016. Id. ¶ 65. In July 2017, a construction crew hit a gas line at the intersection of Peirce and Page Streets, forcing an order to residents to "shelter in place." Id. The City has determined that the project cannot be performed as originally designed, and has abandoned it. Id. ¶ 66.

In May 2016, general contractor Walsh Construction identified Synergy as a subcontractor on a Van Ness sewer project (the "Van Ness Project"). Id. ¶ 71. Synergy set aside significant resources for about ten months to prepare for this subcontract. Id. ¶ 72. However, the City rejected Synergy as a subcontractor in a June 2016 letter because Synergy's price was too high. Id. ¶ 74. Synergy's bid was lower than the general contractor's estimate and that of the City's consultant. Id. ¶ 75. After the City redesignated the project, only one bid was received, which was twice as high as Synergy's. Id. ¶ 77.

Synergy submitted a Government Tort Claims Act claim regarding the Haight Street Project to the City on January 5, 2017. Id. ¶ 67; ECF No. 9. The City denied the claim on January 10, 2017. FAC ¶ 67. In its claim, Synergy described the difficulties it had encountered in performing on the Haight Street Project, its unilateral termination by the City, and its objection to that termination. ECF No. 9 at 7. Even though these events took place between January and December 2015, Synergy dated the incident in the claim as occurring on January 8, 2016 – the date the administrative officer issued her statement of findings. Id. at 6-7. Synergy made claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage. Id. at 8.

On October 19, 2017, Synergy sued the City in the Superior Court for the County of San Francisco for: (1) intentional interference with contractual relations, (2) intentional interference with prospective economic advantage, (3) negligent interference with prospective economic advantage, (4) violation of due process (5) violation of "stigma-plus" due process, and (6) retaliation under 42 U.S.C. §§ 1981, 1983. FAC ¶¶ 80-137. Defendants removed the case to this court on November 24, 2017. ECF No. 1.

The City now moves to dismiss the complaint. ECF No. 8.

### III. JURISDICTION

The Court has jurisdiction over the case because it raises a federal question, under 42 U.S.C. § 1983. 28 U.S.C. § 1331. The Court has pendant jurisdiction over the state tort claims. 28 U.S.C. § 1367.

## IV. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint need not contain detailed factual allegations, facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal citation omitted). In determining whether a plaintiff has met this plausibility standard, a court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the plaintiff. Knievel, 393 F.3d at 1072. Unless amendment would be futile, a district court should freely grant leave to amend the complaint. Fed. R. Civ. P. 15(a)(2); see also Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[W]e have held that in dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (internal citation omitted).

## V. DISCUSSION

### A. Synergy's Claims For Intentional Interference with Contractual Relations, Intentional Interference with Prospective Economic Advantage, and Negligent Interference with Prospective Economic Advantage Fail Because the City of San Francisco Is Not A Stranger to the Contracts

"California recognizes a cause of action against noncontracting parties who interfere with the performance of a contract. It has long been held that a *stranger* to a contract may be liable in tort for intentionally interfering with the performance of the contract." Applied Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 513 (1994) (emphasis and internal quotation omitted).

6

However, "the tort cause of action for interference with a contract does not lie against a party to the contract . . . . The tort duty not to interfere with the contract falls only on strangers-interlopers who have no legitimate interest in the scope or course of the contract's performance." Id. at 514 (internal citations omitted).[5] The City argues that because San Francisco is the owner in both the Haight Street and Van Ness Projects, it is not a "stranger" to the contracts, and therefore the three wrongful interference claims must be dismissed. ECF No. 8 at 14.

As a colleague court has observed, "[t]he case law on who is considered to be a stranger to a contract is quite muddled." Hamilton San Diego Apartments v. RBC Capital Markets Corp., No. 312CV2259JMBLM, 2013 WL 12090313, at *3 (S.D. Cal. Mar. 5, 2013). At one extreme, some courts have interpreted the doctrine so narrowly that "[a] 'stranger,' as used in Applied Equipment, means [only] one who is not a party to the contract or an agent of a party to the contract." Asahi Kasei Pharma Corp. v. Actelion Ltd., 222 Cal. App. 4th 945, 964 (2013); Redfearn v. Trader Joe's Co., 20 Cal. App. 5th 989, 1003 (2018) (expressing the same view).

Many other courts, however, have taken a broader view. For example, in Maritz Inc. v. Carlson Mktg. Grp., Inc., No. C 07-05585 JSW, 2009 WL 3561521 (N.D. Cal. Oct. 30, 2009), the court considered a claim for intentional interference with contract. Plaintiff Maritz had entered into a contract with Visa, Inc., the financial services company, to develop and maintain for Visa and its member banks a points-based software rewards program for use by Visa's cardholders. Visa had previously contracted with defendant Carlson to provide its rewards program. As part of its agreement with Maritz, Visa was obligated to "obtain from Carlson and give to Maritz timely, detailed and accurate information describing the existing rewards program." Id. at *1. Maritz alleged that Carlson, "in an effort to sabotage Maritz's relationship with Visa and regain Visa's business for itself, . . . deliberately failed to provide that which it was supposed to provide when it was supposed to provide it," and "provided incomplete information, corrupt files and/or files that contained 'bugs.'" Id. (internal quotations omitted). The court dismissed Maritz's claims because,

---

[5] The stranger to a contract doctrine also applies to claims for intentional interference with contract, negligent interference with prospective advantage, and intentional interference with prospective economic advantage. Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990).

7

"[a]s a matter of law, Carlson was an interested party whose performance was, according to Maritz's own allegations, required under the [Visa/Maritz agreement]. Because the contractual obligations at issue here provided for Carlson;s performance, it cannot be found to be a stranger to the contract." Id. at *4.

Similarly, in Hamilton San Diego Apartments v. RBC Capital Markets Corp., No. 312CV2259JMBLM, 2013 WL 12090313 (S.D. Cal. Mar. 5, 2013), an apartment developer, Hamilton, brought a claim for intentional interference with contractual relations against RBC, its lender. RBC had given a notice of default to WNC, Hamilton's investor, with whom Hamilton had a separate partnership agreement. Hamilton claimed that RBC gave the notice not because Hamilton was in default – Hamilton contended it was not – but because RBC wanted to back out of its lending commitment or foreclose on the property. Id. at *2. WNC then withdrew from its partnership agreement with Hamilton and demanded to be bought out. Id. The court dismissed Hamilton's interference with contract claim because RBC was not a stranger to the Hamilton/WNC contract given that that contract contemplated RBC's own performance. Id. at *3, 5.

Finally, both Hamilton and Maritz rely on P.M. Group, Inc., v. Stewart, 154 Cal. App. 4th 55 (2007). The plaintiffs in that case were a music promoter and two subpromoters. Id. at 57. The defendants were the singer Rod Stewart, his company Stewart Annoyances, Ltd., his manager, his attorney, and his agent. Id. The parties had begun discussions regarding a series of concerts that Stewart would give in various Latin American venues and, at least in the minds of the plaintiffs, had reached a binding agreement. The plaintiffs also had partners/subpromoters in each of the cities the proposed tour would visit. When the agreement fell through, the plaintiffs sued for, among other things, intentional interference with their contracts with the partners/subpromoters. The Court of Appeal held that Stewart was not a stranger to those contracts, even though he was not a party to them, because the subcontracts all envisioned his performance. Thus, he could not have interfered with them. Id. at 65.

The present case fits squarely into the category described by Hamilton, Maritz, and

Stewart.[6] For both the Haight Street Project and the Van Ness Project, the primary contract was between the City and a general contractor, and that general contractor in turn entered or sought to enter a subcontract with Synergy. Each of the subcontracts envisioned San Francisco's performance as the owner of the contract. FAC ¶¶ 26, 71. Because subcontracts at issue depended on the City's performance, San Francisco could not interfere with them.[7]

### B. The Hearing Officer's Decision Regarding The Haight Street Project Was Not Privileged

Synergy bases its claims concerning the Haight Street Project claims on the issuance of the administrative officer's statement of findings on January 8, 2016. The City argues that the administrative officer's statement of findings is privileged under the litigation privilege, and therefore claims related to the Haight Street Project should be dismissed. Under California Civil Code § 47(b), any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action" is privileged. Graham-Sult v. Clainos, 756 F.3d 724, 741 (9th Cir. 2014) (citations omitted). "The litigation privilege is not limited to the courtroom, but encompasses actions by administrative bodies and quasi-judicial proceedings." Wise v. Thrifty Payless, Inc., 83 Cal. App. 4th 1296, 1303 (2000).

The litigation privilege does not bar Synergy's claim because it is based on the conduct described in the hearing officer's findings, and not the issuance of the findings themselves. "A threshold issue in determining if the litigation privilege applies is whether the alleged injury arises from a communicative act or noncommunicative conduct." Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1248 (2007) (citation omitted). The California Supreme Court

---

[6] Even courts taking a narrow view of the "stranger to the contract" doctrine have acknowledged Stewart's holding that "a contracting party [cannot] be held liable for interfering with the performance of subcontracts if that claim hinge[s] on the defendant's failure to perform on the original contract." United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc., 766 F.3d 1002, 1008 (9th Cir. 2014).

[7] Synergy's allegations that all parties, including the City, also entered into a separate "Partnering Agreement" provides additional support for the conclusion that the City was not a stranger to the Haight Street subcontract.

has "drawn 'a careful distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication.'" Id. (quoting White v. Western Title Ins. Co., 40 Cal.3d 870, 888 (1985)). "As a general rule, the privilege applies only to communicative acts and does not privilege tortious courses of conduct." Id. at 1249 (quotations and citations omitted).

Synergy does not quote from or discuss the content of the statement of findings except to show that the City unlawfully removed it from the Haight Street Project. ECF No. 22 at 13. In other words, Synergy relies on the conduct involved in issuing the statement of findings, rather than the written communications within that statement.[8] The litigation privilege does not apply.

### C. Synergy's Claims for the Van Ness Project Fail Because Synergy Failed to Comply with California Tort Claims Act

Before bringing a suit against a public entity in California, a plaintiff must first file a claim with that entity. Cal. Gov't Code § 945.4. Claims must be brought within one year of the accrual of the cause of action. Cal. Gov't Code § 911.2(a). A plaintiff bringing an action in court must allege compliance with the California Tort Claims Act in her complaint. AIDS Healthcare Found. v. Los Angeles Cty., No. CV1210400PAAGRX, 2013 WL 12134048, at *9 (C.D. Cal. Mar. 18, 2013).

Synergy was removed from the Van Ness Project on June 3, 2016. FAC ¶ 76. It does not allege in the Complaint that it ever submitted a claim for the Van Ness Project. Accordingly, the Court concludes that Synergy did not comply with the California Tort Claims Act as to the Van Ness Project.

Synergy argues that because it seeks injunctive and declaratory relief in addition to damages, the California Tort Claims Act does not apply to its state law claims. ECF No. 22 at 15-16; FAC at 24. Synergy is correct that a suit for injunctive or declaratory relief need not comply

---

[8] Notably, if Synergy's claim is actually based on the actions described in the hearing officer's decision, and not the decision itself, its claim may not be timely. Under the California Tort Claims Act, a claim must be filed within one year of accrual. Cal. Gov't Code § 911.2(a). The City instructed Ghilotti to terminate Synergy well more than a year before January 5, 2017. No party raises the issue and the Court does not discuss it further.

10

with the California Tort Claims Act. Gatto v. Cty. of Sonoma, 98 Cal. App. 4th 744, 762 (2002). However, a government claim must first be filed whenever the primary purpose of a lawsuit is damages, even where that claim also requests some non-pecuniary relief. "[W]here the demand for nonmonetary relief is merely incidental or ancillary to a prayer for damages," the California Tort Claims Act does apply. Hart v. Alameda Cty., 76 Cal. App. 4th 766, 782 (1999). "The critical question is whether the primary purpose of the action is to recover damages or to obtain injunctive relief." Odencrantz v. Dep't of Consumer Affairs, No. G034342, 2006 WL 1149389, at *6 (Cal. Ct. App. May 1, 2006) (citation omitted); see also Gatto, 98 Cal. App. 4th at 761.

Here, while Synergy argues that it seeks injunctive relief in the form of "reinstatement as the subcontractor on the Van Ness Project and a declaration of its right to perform the subcontract," ECF No. 22 at 16, its FAC only lists "injunctive and equitable relief" in its prayer for relief without further elaboration, and repeatedly alleges that it has "suffered damages in excess of $19 million." FAC at 26, ¶¶ 126, 132. The Court concludes that Synergy's claims for declaratory and injunctive relief are merely incidental to its damages claims, and will dismiss the Van Ness Project state claims in their entirety for failure to comply with the California Tort Claims Act.

### D. Synergy's Claims Against Breed and Nuru Related to the Van Ness Project Fail to Comply with the California Tort Claims Act

The City argues that Synergy's claims against Breed and Nuru also fail under the California Tort Claims Act because Synergy failed to file a timely government claim. ECF No. 8 at 17-18. "[T]he Legislature included in the Tort Claims Act what amounts to a requirement that . . . one who sues a public employee on the basis of acts or omissions in the scope of the defendant's employment have filed a claim against the public-entity employer pursuant to the procedure for claims against public entities." Briggs v. Lawrence, 230 Cal. App. 3d 605, 613 (1991) (citing Cal. Gov. Code, §§ 950.2, 950.6(a), 911.2, 945.4)).

Synergy argues only that "the claims [against Breed and Nuru] related to declaratory and injunctive relief should be allowed" for the same reason Synergy thinks such claims should be allowed against the City. ECF No. 22 at 17. For the same reasons stated above, the Court

11

concludes that the claims against Breed and Nuru are essentially damages claims, and therefore the absence of a government claim under the Tort Claims Act is fatal. The state law claims against defendants Breed and Nuru related to the Van Ness Project, but not the Haight Street Project, are dismissed.

### E. Synergy's Fourth Cause of Action for Violation of Section 1983 Based on Violation of Due Process

#### 1. Synergy Does Not Plead a Substantive Due Process Violation

Synergy's FAC brings a fourth cause of action under 42 U.S.C. § 1983, alleging that "Defendants' acts and omissions, as alleged above, constituted a deprivation of Synergy's liberty and property without due process under the Fifth and Fourteenth Amendments to the United States Constitution." FAC ¶ 122.

It is unclear to the Court whether Synergy seeks relief for deprivation of procedural due process or substantive due process.[9] At the hearing on the motion, however, Synergy's counsel stated that its claim was one for a violation of substantive due process. "[W]here, as here, plaintiffs rely on substantive due process to challenge governmental action that does not impinge on a fundamental right, federal courts 'do not require that the government's action actually advance its stated purposes, but merely look to see whether the government could have had a legitimate reason for acting as it did.'" Tyson v. City of Sunnyvale, 920 F. Supp. 1054, 1063 (N.D. Cal. 1996) (quoting Halverson v. Skagit County, 42 F.3d 1257, 1262 (9th Cir. 1994)). "[T]o establish a substantive due process violation based on the City's procedures, [Synergy] must show the procedures are 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare.'" Yagman v. Garcetti, 852 F.3d 859, 867 (9th Cir. 2017) (quoting Samson v. City of Bainbridge Island, 683 F.3d 1051, 1058 (9th Cir. 2012)). "The City's procedures, however, are 'presumed valid, and this presumption is overcome only by a clear showing of arbitrariness and irrationality.'" Id. (quoting Samson, 683 F.3d 1051).

The allegations of Synergy's FAC do not make clear how the City's procedures for

---

[9] Synergy's opposition brief to the motion also cites no authority on this point. If the issue is litigated again, the Court urges Synergy to cite authorities that support its arguments.

12

1  terminating Synergy were "clearly arbitrary and unreasonable, having no substantial relation to the
2  public health, safety, morals or general welfare." To the contrary, the FAC alleges that, following
3  the City's request that Ghilotti terminate Synergy, Synergy's objection was litigated at an
4  administrative hearing and then in a writ of mandate proceeding in the San Francisco Superior
5  Court, at which Synergy prevailed. Synergy's section 1983 claim based on violation of its due
6  process rights is dismissed.

### 2. Synergy's Due Process Retaliation Claim Is Not Duplicative

Synergy's fourth cause of action alleges that it was denied due process based on "Defendants' retaliation against Synergy for its exercise of its constitutionally protected right to access courts and its right to petition the courts for redress of its grievances, and to exercise its free speech, without retaliation." FAC ¶ 122(b). The City argues that this claim should be dismissed because the same conduct forms the basis of Synergy's sixth cause of action for retaliation under the First, Fifth, and Fourteenth Amendments. ECF No. 8 at 20. The sixth cause of action alleges that Defendants violated the First, Fifth and Fourteenth Amendments because "Defendants subjected Synergy to adverse action because of Synergy's exercise of its right to petition the government for redress of grievances of right to access to courts." FAC ¶ 135. The City notes that where a particular constitutional amendment "provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (citations omitted); see also Hufford v. McEnaney, 249 F.3d 1142, 1151 (9th Cir. 2001) ("If, in a § 1983 suit, the plaintiff's claim can be analyzed under an explicit textual source of rights in the Constitution, a court should not resort to the "'more subjective standard of substantive due process.'" (quoting Armendariz v. Penman, 75 F.3d 1311, 1319 (9th Cir. 1996)).

Although the fourth and sixth causes of action are duplicative in certain respects, ECF No. 22 at 17, the Court nonetheless declines to dismiss Synergy's fourth cause of action. The City has not made clear how the First Amendment provides "an explicit textual source" of constitutional protection against retaliation such that Synergy should be precluded from also making a broader

13

due process claim.

## CONCLUSION

For the reasons set forth above, Synergy's first three claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage are dismissed without prejudice because Defendants were not "strangers" to the Synergy/Ghilotti contract. The same three claims are dismissed without prejudice as to the Van Ness Project for failure to comply with the Government Tort Claims Act. The fourth cause of action for violation of Section 1983 on due process grounds is dismissed without prejudice. In all other respects, the motion to dismiss is denied.

An amended complaint is due within 21 days of the issuance of this order. If Synergy does not file a timely amended complaint, the case will proceed only on the surviving claims.

The case management conference currently scheduled for May 23, 2018 is continued to June 27, 2018 at 2:00 p.m. A joint case management statement is due by June 20, 2018.

**IT IS SO ORDERED.**

Dated: May 16, 2018

JON S. TIGAR
United States District Judge