UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNERGY PROJECT MANAGEMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, et al., <br><br> Defendants. | Case No. 17-cv-06763-JST <br><br> **ORDER GRANTING MOTION TO DISMISS** <br><br> Re: ECF No. 51 |

Before the Court is Defendants City and County of San Francisco, San Francisco Public Utilities Commission, San Francisco Municipal Transportation Agency, San Francisco Department of Public Works, London Breed, and Mohammed Nuru's (collectively, "the City") motion to dismiss portions of Plaintiff Synergy Project Management, Inc. ("Synergy")'s second amended complaint ("SAC"). ECF No. 51. The Court will grant the motion.

I. **BACKGROUND**

The facts are discussed in greater detail in the Court's order granting in part and denying in part the City's motion to dismiss Synergy's first amended complaint, ECF No. 49, and are summarized briefly here.[1]

On February 10, 2015, the City and contractor Ghilotti Brothers, Inc. ("Ghilotti") entered into a contract to replace the sewer line, install new water lines, and renovate the pavement on Haight and Hayes Streets (the "Haight Street Project"). SAC ¶ 26. Synergy was selected as a subcontractor on the project: Ghilotti and the City entered into a prime contract, and Synergy and

---

[1] The Court takes the facts as true from the SAC, ECF No. 50. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

United States District Court
Northern District of California

Ghilotti entered into a subcontract. Id. ¶¶ 26-27.

The Synergy-Ghilotti contract explicitly incorporated the terms of Ghilotti's contract with the City. Id. ¶ 134. The City-Ghilotti contract, in turn, "expressly precluded the establishment of any contractual or quasicontractual relationship between the City and Synergy." Id. ¶ 34, Exh. E. Section 102(B) of the City-Ghilotti contract states: "Nothing in the [City-Ghilotti contract] shall be construed to create a contractual relationship between the City and a Subcontractor . . . or a person or entity other than the City and the Contractor." SAC, Exh. E, Exhibit E., sect. 1.02(B), p. 1929 (ECF No. 50-2 at 10). The terms of the City-Ghilotti contract imposed certain obligations on the City, including making available "survey information, such as monuments, property lines, and reports describing physical characteristics, legal limitations and utility locations," and "apply[ing] and pay[ing] for the building permit if required for the Work and . . . pay[ing] all permanent utility service connection fees." ECF No. 25-1 at 12.

The project "was a particularly difficult one, due to many unknown subsurface structures not disclosed to Synergy in the plans provided to it by the City." SAC ¶¶ 41. During the course of the project, Synergy damaged five PG&E gas lines. *Id.* ¶ 43. "The damaged gas lines drew significant public attention, and criticism from neighborhood residents and businesses disrupted by the corrective measures necessitated by the damaged gas lines." *Id.* ¶ 45. The City concluded that Synergy was responsible for the gas line damage, and instructed Ghilotti to terminate Synergy. Id. ¶¶ 47-49.

In addition to its claims regarding the Haight Street Project, Synergy also complains that the City blocked its proposal to serve as a subcontractor under a different prime contractor, Walsh Contruction Company II, "in the Core Work on the San Francisco Municipal Transportation Agency ('SFMTA') Van Ness Corridor Improvement Project (the 'Van Ness Project'), an extensive renovation project for a major San Francisco north/south arterial commissioned by SFMTA in conjunction with SFPUC." Id. ¶ 79. Synergy claims the City removed claimed Synergy from the Van Ness project on the pretext that its bid was too high, when in fact its bid was lower than Walsh's internal estimate and the estimate of the City's own consultant. Id. ¶¶ 83-86.

On November 24, 2017, Synergy filed a complaint in this Court, ECF No. 1, portions of which the City moved to dismiss on December 1, 2017. ECF No. 8. On May 16, 2018, the Court granted the motion in part and denied it in part. ECF No. 49. The Court dismissed without prejudice Synergy's claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage because Defendants were not "strangers" to the Synergy/Ghilotti contract. The Court dismissed the same three claims without prejudice as to the Van Ness Project for failure to comply with the Government Tort Claims Act. The Court also dismissed without prejudice Synergy's fourth cause of action for violation of Section 1983 on due process grounds. The Court denied the motion to dismiss in all other respects.

On June 5, 2018, Synergy filed its SAC. ECF No. 50. The City now moves to dismiss Synergy's first, second, third, fourth, and fifth claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, breach of contract, and breach of the covenant of good faith and fair dealing. ECF No. 51.

## II.  JURISDICTION

The Court has jurisdiction over Synergy's § 1983 claims under 28 U.S.C. § 1331. The Court exercises supplemental jurisdiction over Synergy's related state-law claims pursuant to 28 U.S.C. § 1367(a).

## III.  LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citation omitted). In determining whether a plaintiff has met this plausibility standard, a court must accept all factual

3

1 allegations in the complaint as true and construe the pleadings in the light most favorable to the

2 plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

**IV. DISCUSSION**

**A. Tortious Interference Claims**

Synergy alleges that the City intentionally interfered with contractual relations, SAC ¶¶ 95-109, intentionally interfered with prospective economic advantage, *id.* ¶¶ 111-22, and negligently interfered with prospective economic advantage, *id.* ¶¶ 124-32. The Court dismisses these claims for the same reason it dismissed them in its prior order – the City is not a stranger to the contracts. ECF No. 49 at 9.

Synergy argues that the City *is* a stranger to the subcontract because the City-Ghilotti contract, which was incorporated by reference into the Synergy-Ghilotti contract, precludes any contractual relationship between Synergy and the City. ECF No. 55 at 8 (citing ECF No. 50-2 § 1.02(B) (providing that nothing in the prime contract "shall be construed to create a contractual relationship between the City and a Subcontractor")). This provision does not change the result, because the test for whether an entity is a "stranger" to a contract is not whether it is a party to that contract. Rather, the relevant question is whether the City was an "interested party whose performance was . . . required under the" Synergy-Ghilotti contract, *Maritz Inc. v. Carlson Mktg. Grp., Inc.*, No. C 07-05585 JSW, 2009 WL 3561521, at *4 (N.D. Cal. Oct. 30, 2009) (citing *PM Grp., Inc. v. Stewart*, 154 Cal. App. 4th 55, 57-58 (2007), or whether that contract "contemplated" the City's performance. *Hamilton San Diego Apartments v. RBC Capital Markets Corp.*, No. 312CV2259JMBLM, 2013 WL 12090313, at *3 (S.D. Cal. Mar. 5, 2013). For the reasons explained in the Court's earlier order, the City meets this test and is therefore not a stranger to the Synergy-Ghilotti contract. ECF No. 49. Although the prime contract clarifies that the City has no contract with Synergy, it also describes the City's performance in Synergy's subcontract. *See* ECF No. 25-1 § 2.02 (providing the City would make available survey information and pay for the building permit); ECF No. 56 at 4 ("[I]f San Francisco had not performed its contractual duty to pay its prime contractor Ghilotti, Ghilotti could not in turn have performed its duty to pay its subcontractor Synergy."); *see also c.f.*, ECF No. 50-2 § 4.04(c) (providing the subcontractor must

4

prosecute work "in a manner satisfactory to the City" or face removal at the written request of the City).

Synergy argues that granting the City's motion to dismiss would be unfair because "[t]o shield parties with an economic interest in the contract from potential liability would create an undesirable lacuna in the law between the respective domains of tort and contract." ECF No. 55 at 6, 11, 17, 20, 22 (citing *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1007 (9th Cir. 2014)). This argument is unpersuasive. First, as the foregoing discussion makes clear, and whether it seems fair or not, the California courts *do* shield parties with an economic interest in a contract from liability in at least some instances, as the Ninth Circuit has acknowledged. *See United Nat. Maint.*, 766 F.3d at 1008. Second, Synergy is not without a remedy. Synergy may pursue a claim against Ghilotti directly, ECF No. 50-1 at 114 (describing the claims and dispute resolution procedures Synergy has against Ghilotti), or submit a claim against the City through Ghilotti, ECF No. 25-1 at 47 (similar). Lastly, Synergy – a large, sophisticated business with long prior experience doing work for the City – chose to enter a contract whose terms precluded the claims it now seeks to bring. If it thought those terms were unfair, it could have either bargained for better terms or rejected the contract.[2] *See Cont'l Heller Corp. v. Amtech Mech. Servs., Inc.*, 53 Cal. App. 4th 500, 507 (1997) (stating that "two large, sophisticated construction enterprises . . . could be expected to review, understand and bargain over their" contract). It did neither.

Finally, Synergy argues that the City fails to point to any provision requiring the City's performance in the Van Ness Project. ECF No. 55 at 18. As the Court held in its prior order, "[f]or both the Haight Street Project and the Van Ness Project, the primary contract was between the City and a general contractor, and that general contractor in turn entered or sought to enter a subcontract with Synergy. Each of the subcontracts envisioned San Francisco's performance as

---

[2] "The sophisticated business entity is more likely . . . to be able to bargain effectively for balanced terms." Harry G. Prince, Unconscionability in California: A Need for Restraint and Consistency, 46 Hastings L.J. 459, 481 (1995).

5

the owner of the contract." ECF No. 49 at 9. The allegations and exhibits demonstrate that any subcontract Synergy would have formed with Walsh for the Van Ness Project would have provided for the City's performance. *See, e.g.*, SAC ¶ 79 (explaining that the project included renovating the City's public transportation); ECF No. 50-1 at 67 (proposing a personnel chart with two City officials as the head project managers); *id.* at 80-82 (describing the specific steps the City would perform on the prime contract, such as developing budgets and cost estimates, and relocating bus stops).[3] Synergy cites cases which hold that a subcontractor cannot sue the owner on a prime contract for breach of contract, ECF No. 55 at 18, but since Synergy's cause of action lies in tort, these cases are unhelpful.

### B. Contract Claims

Synergy alleges that the City breached its contract when it terminated Synergy in violation of Section 4107 of the Public Contract Code. SAC ¶¶ 135-38. Similarly, Synergy alleges that the City breached the covenant of good faith and fair dealing when it interfered with its rights to receive the benefit of the subcontract. *Id.* ¶¶ 140-43. Although there was no formal contract between Synergy and the City, Synergy alleges it formed a contractual relationship with the City when it "was accepted as a Subcontractor" because its subcontract with Ghilotti "incorporates all of the terms of the contract between" Ghilotti and the City. *Id.* ¶¶ 34-35.

As previously noted, one of the terms in Ghilotti's contract with the City provides that "[n]othing in the [contract] shall be construed to create a contractual relationship between the City and a Subcontractor." *Id.* ¶ 34 (quoting ECF No. 50-2 § 1.02(B)). This term, which was imported into Synergy's contract with Ghilotti, ends the discussion. Synergy's contract claims fail because the written instrument itself "expressly disavows" the contractual relationship that Synergy alleges exists. *See Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015) (disregarding an allegation that was a "legal conclusion, not a fact, and was belied" by the written contract).[4] Synergy's argument that it may plead in the alternative, ECF No. 55 at 19, does not

---

[3] Additionally, Walsh's prime contract with the City would have incorporated the same general conditions which governed the Haight Street Project. *See* https://www.sfpublicworks.org/sites/default/files/007200-General-Conditions-SFPW-08-2015.pdf

[4] Synergy argues that because the City is not a stranger to the contract, it must be a party. ECF

6

save these claims. The issue is not whether Synergy may allege the existence of a contractual relationship for the purposes of some claims but not others; the issue is whether its contract claims can plausibly be reconciled with the language of the agreements themselves. They cannot.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is granted. The interference claims are dismissed with prejudice, and the contract claims are dismissed without prejudice. An amended complaint is due within 21 days of the issuance of this order. Unless Synergy obtains prior leave of Court for good cause shown, any amendment must be limited to the causes of actions alleged in the SAC. If no amended complaint is filed, the case will proceed only on the remaining claims.

**IT IS SO ORDERED.**

Dated: December 31, 2018



JON S. TIGAR
United States District Judge

---

No. 55 at 21 (citing *Popescu v. Apple Equipment*, 1 Cal. App. 5th 39, 54 (2016)). Synergy's argument relies on the narrow view of the stranger to the contract doctrine which the Court rejected in its prior order and again in this order. ECF No. 49 at 9.