UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYNERGY PROJECT MANAGEMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 17-cv-06763-JST<br><br>**ORDER GRANTING CITY DEFENDANTS' MOTION TO DISMISS AND REMANDING CASE**<br><br>Re: ECF No. 82, 92 |

In its third amended complaint ("TAC"), Plaintiff Synergy Project Management, Inc. asserts four federal claims against Defendants City and County of San Francisco, London Breed, and Mohammed Nuru (collectively, "the City") and two state claims against Defendant Ghilotti Bros., Inc. ("GBI"). ECF No. 77 ¶¶ 94-136. Defendants have filed separate motions to dismiss all claims against them. ECF Nos. 82, 92. The Court will grant the City's motion, ECF No. 82, and remand the claims against GBI to state court without considering the merits of GBI's motion, ECF No. 92.

## I.  BACKGROUND[1]

Synergy is a general contractor and subcontractor providing services that include construction management, demolition, utilities, mass excavation and shoring, grading and paving, and architectural and structural management. ECF No. 77 ¶¶ 13-14. Synergy and the City have a protracted litigation history related to payment on several of their contracts. *Id.* ¶¶ 16-19. Although Synergy prevailed in those lawsuits, the City's significant delay in paying damages

---

[1] The Court accepts as true the facts pleaded in Synergy's TAC, ECF No. 77. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

"financially choked Synergy," "forced Synergy to lay off employees and field personnel," and "severely restricted the company's access to bonding capacity," which it needed to bid on projects as a general contractor. *Id.* ¶ 20. Because it no longer had the financial wherewithal to act as a general contractor, Synergy turned to subcontractor work. *Id.* ¶ 22.

### A. Haight Street Project

On February 10, 2015, the City and GBI "entered into a contract to replace the sewer line, install new water lines, and renovate the pavement on Haight and Hayes Streets" (the "Haight Street Project"). *Id.* ¶ 23. Synergy was selected by GBI as a subcontractor on the project. *Id.* ¶¶ 23-24. The Synergy-GBI contract was entered into on April 17, 2015, and "bound Synergy to the terms" of the City-GBI contract. *Id.* ¶¶ 26, 30 (emphasis omitted). The City-GBI contract "expressly precluded the establishment of any contractual or quasi-contractual relationship between the City and Synergy." *Id.* ¶ 31. The Synergy-GBI contract provided that GBI would "pay [Synergy] for the satisfactory performance" of the agreement and permitted GBI to terminate Synergy as subcontractor on the Haight Street Project for breach of the agreement, failure to "prosecute the said work with promptness, diligence and efficiency," or failure to perform any of the requirements of the contract. *Id.* ¶¶ 28, 29. The Synergy-GBI contract also permitted GBI, in its sole discretion, to terminate the agreement without cause. *Id.* ¶ 29.

GBI and Synergy began work on the Haight Street Project in April 2015. *Id.* ¶ 37. The project "was a particularly difficult one, due to many unknown subsurface structures not disclosed to Synergy in the plans provided to it by the City." *Id.* ¶ 38. During the course of the project, Synergy damaged five PG&E gas lines. *Id.* ¶ 40. "The damaged gas lines drew significant public attention, and criticism from neighborhood residents and businesses disrupted by the corrective measures necessitated by the damaged gas lines." *Id.* ¶ 42. The City concluded that Synergy was responsible for the gas line damage. *Id.* ¶ 44.

On October 8, 2015, "purportedly because of the gas line incidents," Mohammed Nuru, the City's Director of Public Works, wrote a letter to GBI instructing it to stop work on the project and to "remove [Synergy] immediately." *Id.* ¶¶ 5, 46 (alteration in original). Six days later, the City informed Synergy that it had "directed Ghilotti to remove Synergy and to substitute a

replacement contractor." *Id.* ¶ 49.  Both GBI and Synergy opposed Synergy's removal, and Synergy "submitted a formal objection" to the City.  *Id.* ¶¶ 48, 50.

On December 9, 2015, an administrative hearing took place before a City-appointed officer.  *Id.* ¶ 56.  The purpose of the hearing was to consider Synergy's objection that its termination by the City was improper because GBI had neither requested nor consented to Synergy's termination.  *Id.* ¶ 57.  GBI testified in favor of Synergy at the hearing.  *Id.* ¶ 58.  On January 8, 2016, the hearing officer issued a ruling in favor of the City.[2]  *Id.* ¶ 59.

Synergy appealed the hearing officer's decision through a writ of mandate to the San Francisco Superior Court, which vacated the decision on November 10, 2016.  *Id.* ¶¶ 63-64.  The California Court of Appeal reversed the trial court and held that "the hearing officer had jurisdiction to issue a decision under [California Public Contract Code] section 4107(a)."  *Synergy Project Mgmt., Inc. v. City & Cty. of San Francisco*, 33 Cal. App. 5th 21, 37 (2019), *reh'g denied* (Mar. 29, 2019), *review denied* (June 26, 2019).

City officials also "embarked on a campaign to publicly and erroneously depict Synergy as a bad contractor, and to constructively debar Synergy from participation in City projects."  ECF No. 77 ¶ 65.  "Separately, the City took arbitrary and capricious steps to block Synergy's participation in City projects and to remove Synergy from projects for which Synergy had already committed substantial and critical resources" and was the most qualified and cost-effective bidder.  *Id.*  For example, on or about October 10, 2015, then-Supervisor London Breed "publicly denounced Synergy, and announced the City's intent to use Synergy as a scapegoat to blame for problems with the Haight Street Project in retaliation against Synergy for its exercise of its constitutional right to petition the courts for redress of grievances."  *Id.* ¶ 67.  In a public speech broadcast by local television, Breed "blamed Synergy for cutting corners in its performance of the Haight Street Project"; "cited Synergy's successful lawsuits against the City as proof of Synergy's incompetence"; "signaled the City's intent to 'hold [Synergy] accountable'"; "blamed Synergy for undisclosed sinkholes"; and "acknowledged that she had asked City Director of Public Works,

---

[2] The TAC alleges that the date of the hearing officer's decision was January 8, 2015, but this is an obvious typographical error.

3

Mohammed Nuru, to terminate Synergy." *Id.* (alteration in original). At the same event, Breed answered a question regarding the incorrect maps provided to Synergy by "explain[ing] that even though faulty maps might have been blamed for the first gas leak, that's not a good enough excuse for the subsequent ones," and that "[the City] need[s] to understand whether [it has] qualified people to do the job." *Id.* ¶ 69. Breed later "repeated her denunciation" of Synergy "at a public hearing called by Breed and other City Supervisors." *Id.* ¶ 70.

"On or around January 29, 2016, GBI proposed substituted contractors to replace Synergy," and the Department of Public Works approved the replacement a few days later. *Id.* ¶ 61. The new subcontractor encountered difficulties similar to those experienced by Synergy, "hit[ting] a gas line in the area of Haight and Steiner streets in June 2016" and another one "at the intersection of Pierce and Page Streets" in July 2017. *Id.* ¶ 73. The City has since determined that "the Project, as originally designed, cannot be performed," and has abandoned "major portions" of the Project. *Id.* ¶ 74.

Synergy submitted a Government Tort Claims Act claim regarding the Haight Street Project to the City on January 5, 2017, and the City denied the claim on January 10, 2017. *Id.* ¶ 75.

### B. Van Ness Project

In addition to its claims regarding the Haight Street Project, Synergy also alleges that the City blocked its proposal to serve as a subcontractor under a different prime contractor, Walsh Construction Company II, LLC. *Id.* ¶¶ 78-79. In May 2016, Walsh selected Synergy as a subcontractor in the "Core Work on the San Francisco Municipal Transportation Agency ('SFMTA') Van Ness Corridor Improvement Project (the 'Van Ness Project'), an extensive renovation project for a major San Francisco north/south arterial commissioned by SFMTA in conjunction with SFPUC." *Id.* ¶ 79. "Synergy's work was defined as 'core subcontracting work' in the agreement between Walsh and the SFMTA." *Id.* ¶ 80. Synergy set aside significant resources for about ten months to prepare for this subcontract, "culminating in a Walsh-Synergy subcontract agreement in May 2016, which enabled Walsh to list Synergy as a Core Work subcontractor in [Walsh's] proposal" to the City. *Id.* ¶ 82. The City, acting through the SFMTA,

4

rejected Synergy as a subcontractor in a June 2016 letter by "falsely claiming that Synergy's bid was too high," when, in actuality, Synergy's bid "was lower than Walsh's internal estimate" and that of the City's consultant. *Id.* ¶ 83, 85-86.

Walsh removed Synergy as a subcontractor on the Van Ness Project on June 3, 2016. *Id.* ¶ 88. The City later re-designated the "Core Work" previously assigned to Synergy as "Non-Core work," which "enabled the City to market the work to a larger pool of contractors." *Id.* ¶ 89. After the City re-designated the work, only one bid was received, and that bid was more than twice as high as Synergy's bid. *Id.* Synergy claims it "suffered harm and damages from being unable to bid on the project," and that the re-designation of the work from "Core" to "Non-Core" "effectively removed Synergy from the other work" on the Van Ness Project. *Id.* ¶ 90. Synergy submitted a Government Tort Claims Act claim regarding the Van Ness Project to the City on April 12, 2018, and the City denied the claim on May 15, 2018. *Id.* ¶ 91.

### C.     Procedural History

Synergy initiated this case and filed a first amended complaint in the Superior Court of California for the County of San Francisco. ECF No. 1-1. The City removed the case to this Court. ECF No. 1. The Court subsequently granted in part and denied in part the City's motion to dismiss the first amended complaint, ECF No. 49, and the City's motion to dismiss certain claims from the second amended complaint, ECF No. 58.

The Court granted Synergy's unopposed motion for leave to file a third amended complaint, ECF No. 76, which, for the first time, named GBI as a defendant, ECF No. 77. The TAC alleges four federal claims against the City, all under 42 U.S.C. § 1983: (1) violation of substantive due process, (2) violation of procedural due process, (3) "stigma-plus" violation of due process, and (4) First Amendment retaliation. *Id.* ¶¶ 94-126. It alleges two state-law claims against GBI: (1) breach of contract and (2) unlawful removal and substitution of listed contractor under California Public Contract Code section 4107. *Id.* ¶¶ 127-36. The City and GBI move to dismiss all claims against them. ECF Nos. 82, 92.

## II.    JURISDICTION

The Court has jurisdiction over Synergy's federal claims under 28 U.S.C. § 1331. For the

1  reasons discussed at the end of this order, the Court does not reach the question, raised by GBI, of
2  whether the Court has supplemental jurisdiction over Synergy's state-law claims.

## III.   REQUESTS FOR JUDICIAL NOTICE

Before turning to the merits of Defendants' motions to dismiss, the Court addresses the parties' requests for judicial notice. "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Judicial notice provides an exception to this rule. *Id.*

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." If a fact is not subject to reasonable dispute, the court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). The Ninth Circuit has cautioned, however, that courts must be wary that the "use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery." *Khoja*, 899 F.3d at 998. Accordingly, "a court cannot take judicial notice of disputed facts contained in . . . public records," when, for instance, "there is a reasonable dispute as to what the [record] establishes." *Id.* at 999, 1001.

Both the City and GBI filed multiple requests for judicial notice in support of their motions.[3] ECF Nos. 84, 93, 95, 99, 102. All of the documents for which Defendants request judicial notice were either publicly recorded in San Francisco County or are court records. These are proper subjects of judicial notice. *E.g.*, *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) ("*undisputed* matters of public record," but not "*disputed* facts stated in public records," are

---

[3] Plaintiffs filed late objections to the requests for judicial notice, ECF Nos. 105-07, which the City moved to strike, ECF No. 108. Although the objections were late, the Court nonetheless considered them, and the motion to strike is denied. In addition, the purported stipulation filed at ECF No. 109 is denied, as it is a stipulation only between the two sets of Defendants and does not include Synergy's consent.

6

1  proper subjects of judicial notice (emphasis in original)); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (taking judicial notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (citation omitted)). Moreover, these documents set forth the proceedings described in the TAC, and "[t]he Ninth Circuit has accepted that 'if a plaintiff's claims are predicated upon a document, the defendant may attach the document to his Rule 12(b)(6) motion, even if the [plaintiff's] complaint does not explicitly refer to it.'" *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1159 (C.D. Cal. 2007) (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006)). Accordingly, the Court grants Defendants' requests for judicial notice in their entirety. Plaintiff's objections to these requests are overruled.

## IV. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While this standard is not a probability requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted). In determining whether a plaintiff has met this plausibility standard, a court must "accept all factual

7

allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## V. DISCUSSION

### A. Timeliness of the City's Motion

Synergy first asserts that the City is barred from filing this motion under Federal Rule of Civil Procedure 12(b) because the "City Defendants filed an answer to Plaintiff's Second Amended Complaint [("SAC")] on February 5, 2019." ECF No. 90 at 9. According to Synergy, "[a]s Defendants have already filed a responsive pleading, they cannot now file a motion to dismiss under Rule 12(b)." *Id.* While Synergy correctly states the legal principle that a 12(b)(6) motion "must be made before pleading if a responsive pleading is allowed," Fed. R. Civ. P. 12(b), it ignores the simple fact that an amended pleading requires a new response, Fed. R. Civ. P. 15(a)(3). The City's answer to the SAC was not a responsive pleading to the TAC, and there is nothing untimely about the current motion to dismiss.

Synergy further argues that Rule 12(g) bars the City's motion because the City could have raised the same arguments in its prior motion to dismiss but failed to do so. However, as this Court previously explained, "[t]he Ninth Circuit has made clear that a district court may consider a motion to dismiss even when it raises a defense omitted from a prior motion." ECF No. 91 at 1-2 (citing *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017), *aff'd sub nom. Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019)). The Court will do so here.

### B. First Amendment Retaliation Claim

Synergy alleges that the City violated its First Amendment rights by removing it from the Haight Street and Van Ness Projects in retaliation for its constitutionally protected petitioning activity of filing successive suits against Defendants. "When a business vendor operates under a contract with a public agency, we analyze its First Amendment retaliation claim under § 1983 using the same basic approach that we would use if the claim had been raised by an employee of the agency." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004). To determine whether a plaintiff has stated a claim for First Amendment retaliation, a court must consider:

8

> a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). The plaintiff bears the burden on the first three questions, but the burden shifts to the defendant on the last two. *Id.* at 1070-71. All five "factors are necessary, in the sense that failure to meet any one of them is fatal to the plaintiff's case." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013)

Synergy has failed to satisfy its burden on the first requirement: that it spoke on a matter of public concern. This requirement applies with equal measure whether the conduct at issue is characterized as petitioning activity or speech. *See Rendish v. City of Tacoma*, 123 F.3d 1216, 1223 (9th Cir. 1997) ("Regardless of whether the right to grieve an employment dispute is characterized as the exercise of the right to petition or the right to free speech, the same public concern requirement applies."). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). "Speech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" *Johnson v. Multnomah Cty.*, 48 F.3d 420, 422 (9th Cir. 1995) (quoting *Connick*, 461 U.S. at 146). For example, speech that "seek[s] to bring to light actual or potential wrongdoing or breach of public trust" is protected, *Connick*, 461 U.S. at 148, as is speech that involves "'issues about which information is needed or appropriate to enable the members of society' to make informed decisions about the operation of their government," *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940) (footnote omitted)). But "speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003) (internal quotation marks and citation omitted). Synergy's alleged activity, which

relates only to a private contractual dispute, falls into the latter category and is not protected. This is dispositive of its First Amendment retaliation claim. Because there is no set of facts under which Synergy could plausibly allege that its prior lawsuits touched on matters of public concern, dismissal is without leave to amend. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) ("[I]n dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.").

### C. Due Process Claims

Synergy also asserts that the City violated its procedural and substantive due process rights in four ways: (1) by the City's "wrongful use of Public Contract Code Section 4107 to unilaterally remove Synergy from the Haight Street Project"; (2) by "Defendants' retaliation against Synergy for its exercise of its constitutionally protected right to access to courts and its right to petition the courts . . . and to exercise its right of free speech, without being subject to retaliation"; (3) by "the City's use of pretextual grounds to force Synergy's removal from the Van Ness Project"; and (4) by "the City's *de facto* debarment of Synergy," which deprived Synergy of its "right to do business with the City." ECF No. 77 ¶ 100 (substantive due process); *id.* ¶ 110 (procedural due process).

To state a procedural due process claim under § 1983, plaintiffs must allege that the government deprived them of a constitutionally protected liberty or property interest without adequate procedural protections. *E.g.*, *Fed. Home Loan Mortg. Corp. v. SFR Investments Pool 1, LLC*, 893 F.3d 1136, 1147 (9th Cir. 2018). "The Due Process Clause does not create substantive rights in property; the property rights are defined by reference to state law." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Synergy alleges that it had protectable liberty and property interests in completing the Haight Street Project, in being awarded the Van Ness Project, in the bidding process for City contracts, and in its good reputation. ECF No. 77 ¶ 104.

Substantive due process protects against "the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). Where, as here, a plaintiff "challenge[s] governmental action that does

10

not impinge on a fundamental right, courts 'do not require that the government's action actually advance its stated purposes, but merely look to see whether the government could have had a legitimate reason for acting as it did.'" *Tyson v. City of Sunnyvale*, 920 F. Supp. 1054, 1063 (N.D. Cal. 1996) (quoting *Halverson v. Skagit County*, 42 F.3d 1257, 1262 (9th Cir. 1994)). To establish a substantive due process violation based on the City's procedures, Synergy must show the procedures are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Yagman v. Garcetti*, 852 F.3d 859, 867 (9th Cir. 2017) (quoting *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012)). "The City's procedures, however, are 'presumed valid, and this presumption is overcome only by a clear showing of arbitrariness and irrationality.'" *See id.* (quoting *Samson*, 683 F.3d at 1058).

Each of Synergy's due process theories fails. First, its theory as to Public Contract Code section 4107 is precluded by the California Court of Appeal's decision in *Synergy Project Management, Inc. v. City and County of San Francisco*, 33 Cal. App. 5th 21 (2019). Synergy alleges that the "only way [it] could have been properly removed from the Haight Street Project was under the authority of a hearing that complied with the relevant sections of the Subletting and Subcontracting Fair Practices Act" ("SSFPA"). ECF No. 77 ¶ 60. But the California Court of Appeal has already decided that the City's procedures – i.e., holding a hearing pursuant to section 4107 – "substantially complied" with the SSFPA, *Synergy*, Cal. App. 5th at 37; "complied in substance with every reasonable objective of the statute," *id.* at 27 (citation omitted); and "furthered the statutory objective of protecting public safety," *id.* at 35. These are the same issues that Synergy seeks to litigate in its due process claims here, and Synergy was a party to the prior proceeding that resulted in a final judgment on the merits. The California Court of Appeal's decision is therefore entitled to preclusive effect in this Court. *Kay v. City of Rancho Palos Verdes*, 504 F.3d 803, 808-09 (9th Cir. 2007) (discussing criteria used "to determine the preclusive effect of [a] California state court decision" in federal court).

Synergy's second theory, based on the City's alleged retaliation against Synergy for exercising its First Amendment rights, also fails. Synergy cannot rely on "the more generalized notion of substantive due process" where, as here, the First Amendment "provides an explicit

11

textual source of constitutional protection against a particular sort of government behavior." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks and citation omitted).[4] As to procedural due process, Synergy fails to articulate a viable legal theory and cites only to *Blackledge v. Perry*, 417 U.S. 21 (1974), and *North Carolina v. Pearce*, 395 U.S. 711 (1969), for the proposition that "government retaliation against a person for exercising a constitutional right can violate procedural due process." ECF No. 90 at 17-18. Those cases held, respectively, that it violates due process for the government to file a more severe charge against or impose a higher sentence upon a defendant who successfully challenged his original conviction. *Blackledge*, 417 U.S. at 28-29; *Pearce*, 395 U.S. at 725. *Blackledge* and *Pearce* shed no light on the present controversy. The Court can only conclude that this theory is simply a reassertion of Synergy's First Amendment retaliation claim, which the Court has already rejected.

Synergy's third theory is also insufficient to state a claim. In its tort claim submitted to the City, Synergy notes that it received a hearing at which evidence was presented through both documents and witness testimony. ECF No. 77 ¶ 91; ECF No. 77-2 at 17. Synergy has not alleged any additional procedural safeguards it contends it was due, and its procedural due process claim therefore fails. Likewise, Synergy does not state a substantive due process claim based on its removal from the Van Ness Project because it acknowledges that the re-designation of the work from "Core" to "Non-Core" – which Synergy contends was a pretextual grounds for its removal – "enabled the City to market the work to a larger pool of contractors." ECF No. 77 ¶¶ 85, 89. This is not an objective having "no substantial relation to the public health, safety, morals or general welfare," as required to support a substantive due process claim. *Yagman*, 852 F.3d at 867 (quoting *Samson*, 683 F.3d at 1058).

Finally, Synergy's fourth theory, which alleges that the City has de facto debarred Synergy from doing business with it, also fails to allege a due process violation. Synergy does not allege sufficient facts to show that it has been prevented from engaging in any additional projects beyond the Haight Street and Van Ness Projects. As discussed above, Synergy received adequate process

---

[4] The Court's ruling on the motions to dismiss Synergy's first amended complaint was insufficiently clear on this point. ECF No. 49 at 13-14.

as to those two projects, and neither process was "clearly arbitrary and unreasonable." *Yagman*, 852 F.3d at 867 (quoting *Samson*, 683 F.3d at 1058).

Accordingly, Synergy's procedural and substantive due process claims are dismissed. Because it does not appear that Synergy could cure the deficiencies discussed above, dismissal is without leave to amend.

### D.  "Stigma-Plus Due Process" Claim

Synergy also alleges a "Stigma-Plus Due Process" claim against the City. ECF No. 77 at 23. Synergy alleges that it "suffered reputational harm when Defendants publicly issued false statements wrongfully blaming Synergy for problems that occurred with the Haight Street Project," and that this harm "foreclosed Synergy's freedom to take advantage of other economic and business opportunities." ECF No. 77 ¶¶ 118-19.

"[P]rocedural due process protections apply to reputational harm only when a plaintiff suffers stigma from governmental action plus alteration or extinguishment of 'a right or status previously recognized by state law.'" *Humphries v. Cty. of Los Angeles*, 554 F.3d 1170, 1185 (9th Cir. 2009), *rev'd and remanded on other grounds sub nom. Los Angeles Cty. v. Humphries*, 562 U.S. 29 (2010) (quoting *Paul v. Davis*, 424 U.S. 693, 711 (1976)). "The stigma imposed must be severe and genuinely debilitating before the discharge can rise to a level of constitutional concern. In other words, the stigma must seriously damage a person's reputation or significantly foreclose his freedom to take advantage of other employment opportunities." *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992) (internal quotation marks, alteration marks, and citation omitted). Thus, "[a]ccusations that an employee is incompetent, unable to get along with others, lacks judgment, or is untrustworthy fail to rise to a level that implicates a liberty interest." *Murphy v. Goss*, 103 F. Supp. 3d 1234, 1241 (D. Or. 2015), *aff'd*, 693 F. App'x 636 (9th Cir. 2017). "The accusations must also be substantially false." *Id.* (citing *Siegert v. Gilley,* 500 U.S. 226, 234 (1991)).

Synergy's allegations do not rise to the level of legally actionable stigma. Allegations of shoddy workmanship or even incompetence are not sufficient to meet the "severe and genuinely debilitating" bar imposed by this claim. *Hyland*, 972 F.2d at 1141; *see also Gray v. Union Cty.*

*Intermediate Educ. Dist.*, 520 F.2d 803, 806 (9th Cir. 1975) (allegations of "incompetence, hostility toward authority, and aggressive behavior . . . certainly are not complimentary," but these "are simply not the kinds of accusations which warrant a hearing"). The City raised this issue in its motion, ECF No. 82 at 27, and Synergy failed to respond, ECF No. 90 at 23-24 (arguing only that Synergy has a protectable property interest in its goodwill). Nor does it appear to the Court that Synergy could cure this deficiency. Synergy's stigma-plus claim is therefore dismissed without leave to amend.

### E. State-Law Claims

The Court has now dismissed all federal claims, leaving only Synergy's two state-law claims against GBI. The Court lacks original jurisdiction over these claims because Synergy and GBI are not diverse. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (explaining that diversity jurisdiction requires that "each of the plaintiffs must be a citizen of a different state than each of the defendants"); 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business. . . ."); ECF No. 77 ¶¶ 1, 4 (alleging that both Synergy and GBI are California corporations).

Synergy and GBI dispute whether the claims against GBI meet the criteria for supplemental jurisdiction under 28 U.S.C. § 1367(a). The Court does not decide that question because it "has dismissed all claims over which it has original jurisdiction" and would decline to exercise supplemental jurisdiction even if it existed. 28 U.S.C. § 1367(c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

The Court must now decide how to "best accommodate the values of economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). The Court has the power to dismiss the state-law claims, but it also has "wide discretion" to remand the case. *Id.* at 351-57. As the Supreme Court has explained:

> [A] remand may best promote the values of economy, convenience,

14

> fairness, and comity. Both litigants and States have an interest in the prompt and efficient resolution of controversies based on state law. Any time a district court dismisses, rather than remands, a removed case involving pendent claims, the parties will have to refile their papers in state court, at some expense of time and money. Moreover, the state court will have to reprocess the case, and this procedure will involve similar costs. Dismissal of the claim therefore will increase both the expense and the time involved in enforcing state law.

*Id.* at 353. The Court finds that to be the case here.

GBI argues that the Court should dismiss rather than remand this case because GBI was not named as a defendant in the original state-court proceedings. However, this fact is not dispositive; claims that were filed in federal court after a case has been removed from state court may be remanded even though those claims "had never been filed in State court." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001). As the Fourth Circuit has explained:

> Even though parties to a "case" (or an "action") may change during its prosecution in court through dismissal or joinder, the case remains the same case that was opened when the complaint was filed. And remand concepts apply to the "case" or "action," not to the parties. Indeed, § 1447(e) explicitly recognizes the subject of remand as the "case" or "action" and not the parties to it. Thus, the question is not whether these particular plaintiffs were previously before the State court, but whether the case was previously before that court.

*Id.* (citations omitted). GBI attempts to distinguish *Hinson* by observing that the claims at issue there were brought by new *plaintiffs* against the same defendant who removed the case, whereas GBI is a new *defendant*. But the court's reasoning applies equally to all parties added to a case after removal, regardless of whether the newly joined party is a plaintiff or a defendant. Additionally, in this case, the factual allegations in the state-court complaint and the TAC substantially overlap, including as to allegations concerning GBI's actions, and the Court does not find remand to be unfair. To the contrary, remand, rather than dismissal, would "best accommodate the values of economy, convenience, fairness, and comity." *Carnegie-Mellon Univ.*, 484 U.S. at 351.

## CONCLUSION

The City's motion to dismiss all federal claims is granted without leave to amend.[5] The

---

[5] In light of this conclusion, the Court need not reach the individual City defendants' qualified

remaining state-law claims against GBI are remanded to the Superior Court of California for the County of San Francisco.  The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated:  November 21, 2019



JON S. TIGAR
United States District Judge

---

immunity arguments.